UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-CIV-61529-MORENO/TORRES

CATHRIN LORENTZ,

    Plaintiff,

vs.

SUNSHINE HEALTH PRODUCTS, INC.,
a Florida corporation, and CATHIE
RHAMES,

    Defendants.

_____/

**PLAINTIFF's MOTION FOR SANCTIONS
AND TO STRIKE JEFF SEDLIK'S EXPERT REPORT**

**COMES NOW,** the Plaintiff, CATHRIN LORENTZ, by and through undersigned counsel, hereby files this Motion for Sanctions and to Strike Jeff Sedlik's Expert Report, and states as follows:

Defense counsel and the Defense expert, Jeff Sedlik, have displayed unprofessional and unethical behavior over the past several months. The Defendants have repeatedly lied under oath, provided contradictory testimony, blocked the Plaintiff from multiple discovery efforts, violated court orders, harassed and attempted to bribe witnesses in the instant action. The Defendant's conduct is reprehensible and should be appropriately addressed by the court.

**Defense Counsel's Communication with Witnesses**

Plaintiff's counsel disclosed Peter Hall as a witness in November 2009. Peter

Hall is a photographer who has taken multiple pictures of Cathrin Lorentz, including photographs at issue in the instant action. (Exhibit D).  The discovery deadline herein was June 14, 2010.  As such, the Defendants had the opportunity to depose Peter Hall for approximately seven (7) months.  The Defendants made no effort to depose Peter Hall during that time.

Defense counsel has retained assistance from a lawyer in the UK, named Rowel Genn.  In or around August 2010 Rowel Genn contacted Peter Hall requesting information about Cathrin Lorentz.  Peter Hall was uncomfortable with Mr. Genn's communications and chose not to discuss Cathrin Lorentz with him. Subsequently, Mr. Genn, under the direction of the local Defense counsel, began harassing Peter Hall. (Exhibit A, Peter Hall Declaration).  Peter Hall has expressed, on multiple occasions, his dismay at the harassment and general inappropriate behavior by Defense counsel. (Exhibit B).  On August 26, 2010 Mr. Genn wrote to Mr. Hall attempting to have him provide a statement to Jeff Sedlik.  Mr. Genn stated that Mr. Jensen, another photographer who has taken pictures of the Plaintiff "is considering legal proceedings against all of those involved in the purported registration of his photographs… Plainly that would involve you in such litigation. We suspect that can be avoided by you now telling the whole truth of this matter."  Mr. Genn then went on in his letter to state that "Ignoring this letter may lead to our clients starting proceedings and increase your personal liability to costs." (Exhibit B).  Mr. Genn also attached declarations written by

Frode Jensen and Espen Knudsen.[1]  In this letter, Mr. Genn threatened legal action by Mr. Jensen against Peter Hall for his failure to provide a statement.  Mr. Genn's letter is not only direct evidence of defense counsel's threats, but also evidence of an inappropriate relationship with Frode Jensen.  Mr. Jensen purports to be an independent witness in the underlying action.  Why would defense counsel have such control over the disposition of Mr. Jensen's alleged legal actions, unless defense counsel was providing legal advice or instructions to Mr. Jensen?

Then on September 14, 2010, in yet another email to Peter Hall, Mr. Genn offered Mr. Hall £500 to speak him! (Exhibit B).  Mr. Genn stated that the defendants would put £500 towards Mr. Hall's "reasonable costs" if he were to provide a statement.  While an attorney is permitted to pay a witness to attend or testify at a proceeding under 4-3.4 of the Rules of Professional Conduct., Mr. Genn had not asked Mr. Hall to attend or testify at a proceeding.  Mr. Genn has simply asked for a statement and offered £500 for the testimony.  Mr. Genn and the defendants have attempted to bribe Mr. Hall in direct contravention of the rules of professional conduct.

Further, Mr. Genn has made harassing phone calls to Peter Hall on multiple occasions.  Mr. Genn has kept Mr. Hall on the phone for long periods of time, threatening future expense and liability if he refused to provide a statement.

---

[1] Further, Mr. Genn clearly provided the declarations of Frode Jensen and Espen Knudsen in an attempt to solicit favorable testimony from Peter Hall. Both witness's have provided declarations which speak negatively about the Plaintiff and her career as a model. There was no reason to provide those declarations to Peter Hall in an email supposedly seeking his honest and truthful testimony. The only explanation is that Mr. Genn sent the declarations in an effort to color Mr. Hall's opinion.

When Peter Hall declined to respond to Defense counsel's continued threats, bribes and harassment, defense counsel filed a burdensome motion with the court seeking to reopen discovery in order to depose Mr. Hall, despite his prior long standing availability for deposition.

"[18 U.S.C. § 201(c)(2)] makes it a criminal offense to "directly or indirectly [] give[], offer[], or promise[] anything of value to any person,  for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing or other proceeding, before any court…." United States v. Moody, 977 F.2d 1420, 1424 (11th Cir. 1992).  Giving something of value for a person's testimony outside a courtroom in prohibited. Id (citing Geaneas v. Willets, 911 F.2d 579, 583-85 (11th Cir.1990)).

In Quiroz v. Superior Bldg. Maint., Inc., 2008 U.S. Dist. LEXIS 61534 (S.D. 2008), the Court found that Mr. Quiroz attempted to bribe witnesses by offering monetary compensation in exchange for testimony.  Mr. Quiroz argued that an exception to the criminal witness bribery statute applies to a party offering to reimburse a witness for the cost of travel to court and the reasonable value of time lost while attending court proceedings. 18 U.S.C. § 201(d).  The court was not persuaded by this argument, as the circumstances surrounding Mr. Quiroz's offers evidenced bad faith, including the fact that he offered a specific sum of money which exceeded the amount of reasonable cost of witness travel expenses and value of lost time while attending court proceedings. The court applied appropriate sanctions as a result.  Quiroz at 21*.  Similarly, in the

instant action, defense counsel has attempted to offer monetary compensation in a manner that does not fall within the exception to the criminal witness bribery statute. Defense counsel has offered a fixed sum of money in exchange for Mr. Hall providing a statement. Defense counsel did not ask Mr. Hall to attend a deposition or court proceeding for which expenses may be incurred. Although they offered a sum of money for "reasonable expenses," what expenses could be incurred in providing a statement over the phone? Moreover, Defense counsel threatened Mr. Hall with litigation if he chose not to provide a statement. The combination of these threats and offers to pay money evidence the defendants' improper conduct and are akin to the circumstances in Quiroz.

In In re Complaint of PMD Enterprises Inc., 215 F. Supp. 2d 519, 530 (D.N.J. 2002) the court held that compensation to an adverse fact witness for time spent reviewing documents apart from time "lost physically attending trial and testifying" was improper. The court found that the attorney's conduct was more serious than a typical violation "as his *ex parte* communications through his investigator in violation of RPC 4.2 and 5.3 consisted of offering compensation to an adverse fact witness. In other words, [the attorney's] investigator did not simply engage in an improper *ex parte* conversation *or* offer compensation to [one of the] fact witnesses, he engaged in *ex parte* contact *and* offered to pay an adverse fact witness a substantial sum to review certain documents." Id. "Payments to non-expert witnesses are specifically limited to statutory witness fees; reasonable expenses actually incurred for mileage, meals, and lodging;

and reasonable compensation for time lost from work while attending a trial or testifying by deposition." McIntosh v. State Farm Fire & Cas. Co., 2008 U.S. Dist. LEXIS 27736 at 7* (S.D. Miss. Apr. 4, 2008).  Rule 4-3.4(b) does not distinguish between truthful or untruthful testimony – "all inducements for any testimony are forbidden." United States v. Lowery, 15 F. Supp. 2d 1348, 1998 U.S. Dist. LEXIS 12771 at 31*, 50 Fed. R. Evid. Serv. (CBC) 634 (S.D. Fla. 1998); see also In New York v. Solvent Chem. Co., 166 F.R.D. 284 at 16* (W.D.N.Y. 1996) (finding that "The payment of a sum of money to a witness to "tell the truth" is as clearly subversive of the proper administration of justice as to pay him to testify to what is not true").

Further, the court in PMD Enterprises found that the attorney was liable for the actions of his investigator as "it is a fundamental tenet of professional responsibility that an attorney may not do through an agent that which he could not do himself." Id at 528. The court notes that this principle is found in RPC 5.3, which provides:

> With respect to a nonlawyer employed or retained by or associated with a lawyer:
>
> (a) every lawyer or organization authorized by the Court Rules to practice law in this jurisdiction shall adopt and maintain reasonable efforts to ensure that the conduct of nonlawyers retained or employed by the lawyer, law firm or organization is compatible with the professional obligations of the lawyer.
>
> (b) a lawyer having direct supervisory authority over the non lawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and
>
> (c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:
>
>> (1) the lawyer orders or ratifies the conduct involved;

>(2) the lawyer has direct supervisory authority over the person and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action; or
>
>(3) the lawyer has failed to make reasonable investigation of circumstances that would disclose past instances of conduct by the nonlawyer incompatible with the professional obligations of a lawyer, which evidence a propensity for such conduct.

Id. The facts in PMD Enterprises are similar to those of the instant action. The defense attorneys, through co-counsel Mr. Genn, made improper ex parte communications with one of Plaintiff's witnesses **and** attempted to pay him for "expenses" unrelated to those of physically attending trial or testifying at a court proceeding **and** threatened him with litigation **and** harassed him with phone calls on multiple occasions. The local defense attorneys were well aware of Mr. Genn's communications as Mr. Genn stated in his September 14, 2010 letter, that "**we** are instructed that **our** clients are prepared to contribute £500…" As such, local defense counsel and the defendants should be held accountable under RPC 5.3 for Mr. Genn's inappropriate actions.

"In cases where an attorney has engaged in improper *ex parte* communications with a represented party the sanctions employed have varied from the severe sanction of disqualification, to the more lenient sanction of precluding counsel from using any information obtained through the *ex parte* contacts." Id at 530 (quoting Belote, 1998 U.S. Dist. LEXIS 3571, 1998 WL 136523 (precluding counsel from using information obtained *ex parte*); Lennen v. John Eppler Machine Works, Inc., 1997 U.S. Dist. LEXIS 13857, 1997

WL 566078 (E.D.Pa. Sept. 5, 1997) (same); Inorganic Coatings, Inc. v. Falberg, 926 F. Supp. 517 (E.D.Pa. 1995) (disqualifying counsel). "

In RentClub, Inc. v. Transamerica Rental Finance Corp., 811 F. Supp. 651 (M.D.Fla. 1992), *aff'd*, 43 F.3d 1439 (11th Cir. 1995), the plaintiff's attorney hired as a "trial consultant" a fact witness and former employee of the defendant with access to confidential information. The court found that the consultant agreement was a bribe to the fact witness to disclose confidential information and clearly inappropriate and in violation of the Florida Code of Professional Conduct. Id. at 654. Moreover, the court concluded that the *ex parte* contact with the witness violated RPC 4.2. *Id.* at 658. As a result, the court held that the proper sanction was to disqualify counsel. Id. Similarly, in Ward v. Nierlich, 2006 U.S. Dist. LEXIS 97373 (S.D. Fla. 2006), the court found that the attorney's paying of defense witnesses for their testimony was a violation of Rule 4-3.4(b) of the Rules of Professional Conduct, a corruption of the judicial process and a commitment of fraud on the Court. Id at 23*. Since the plaintiffs cooperated in this scheme, the court found that it was appropriate to deprive them of their counsel as it "was their own fault for engaging in a scheme to purchase the testimony of witnesses." Id.

In New York v. Solvent Chem. Co., 166 F.R.D. 284(W.D.N.Y. 1996), the court found that paying a witness for his reasonable time in providing testimony may have been appropriate, however, "providing a witness with protection from liability as a means of obtaining his cooperation as a fact witness went too far." The court

determined that the combination of payments with an indemnification agreement entered into between defendants and a witness were akin to financial inducements, and were intended to overcome the hostility of that witness and procure his cooperation and testimony. Id.  In the instant action, Mr. Genn has essentially promised Mr. Hall that Mr. Jensen would not sue him.  As one of Plaintiff's witnesses, Mr. Hall may be considered a "hostile witness," from whom Mr. Genn attempted to procure cooperation.

"The Court's inherent authority includes 'the power to control admission to its bar and to discipline attorneys who appear before it.' PMD Enterprises  at 530 (citing Chambers, 501 U.S. at 43 (citing Ex Parte Burr, 22 U.S. 529, 9 Wheat. 529, 531, 6 L. Ed. 152 (1824)); accord In re Tutu Wells Contamination Litig., 37 V.I. 398, 120 F.3d 368, 383 (3d Cir. 1997); In re Corn Derivatives Antitrust Litig., 748 F.2d 157, 160 (3d Cir. 1984), *cert. denied sub nom.,* Cochrane & Bresnahan v. Plaintiff Class Representatives, 472 U.S. 1008, 86 L. Ed. 2d 718, 105 S. Ct. 2702 (1985).  The court has discretion to sanction attorneys for their misconduct. As evidenced in the case law cited herein, courts have gone as far as to disqualify attorneys for bribes, harassment, and threats akin to those perpetrated by the defense attorneys in the instant action.  The Plaintiff asks that the court award appropriate sanctions for the Defendant's behavior including, but not limited to, the award of attorneys fees, disqualification of defendant's expert witness report, and disqualification of defense counsel.

**Further Misconduct**

Plaintiff has also suspected the payment of monetary compensation to Mr. Jensen and Mr. Knudsen in exchange for testimony. Jeff Sedlik contacted and allegedly received statements from both Mr. Jensen and Mr. Knudsen in preparing his expert report. These statements were signed on August 19, 2010. (Exhibit C). On the same date, Mr. Knudsen executed a copyright licenses, granting the Defendants rights to images of Cathrin Lorentz, in exchange for $500.00. On August 18, 2010, Mr. Jensen executed a copyright license, granting the Defendants rights to images of Cathrin Lorentz, in exchange for $1500.00. (Exhibit C). Considering the attempt made to compensate Peter Hall, it is clear that the payments to Mr. Knudsen and Mr. Jensen were to obtain licenses **and** testimony.

As established above, it is a violation of Rule 4-3.4(b) of the Rules of Professional Conduct to pay for witness testimony. Courts have found that payments by a party to a witness render that witness incompetent to testify. See <u>Golden Door Jewelry Creations, Inc.</u>, 865 F. Supp. at 1524-26, aff'd in relevant part 117 F.3d 1328, 1335 n.2 (11th Cir. 1998) (barring party from introducing testimony of a fact witness as a sanction for compensating that witness). The court in <u>Golden Door</u> determined that payments to the witnesses "warranted exclusion of all tainted evidence -- and its implicit determination that mere disclosure of the payments and the opportunity of the opposition to examine the witnesses provided insufficient relief." Id.

The undersigned was not given the opportunity to examine Mr. Jensen or Mr. Knudsen. In addition, it is likely that when these witnesses were discovered, they were

not timely disclosed pursuant to FRCP 26. As such, the undersigned has been prejudiced by the acquisition of this testimony. As Mr. Sedlik has refused to provide underlying evidence of his communications with these witnesses in violation of his subpoena, the undersigned has been unable to determine the truth of these statements, and whether these witnesses were offered payment for their testimony. Based on the communications with Mr. Hall regarding monetary compensation, the payments furnished to Mr. Knudsen and Mr. Jensen, and the defendants' failure to provide timely disclosure of these witnesses, it is clear that the Defendants have acted in bad faith. As a result, the Defendants should be barred from using or referencing any witness testimony or witness declarations that they have paid for, including the declarations of Frode Jensen and Espen Knudsen as called for by the Eleventh Circuit in Golden Door.

Plaintiff also requests an order requiring the Defendant, Defense counsel and Defense expert, Jeff Sedlik to produce all documents relating to any contacts made with Mr. Jensen and Mr. Knudsen to ascertain whether the Defendants bribed, paid for and/or threatened Mr. Jensen and Mr. Knudsen in an attempt to receive witness testimony, as they have done with Mr. Hall. Cox v. Administrator United States Steel & Carnegie, 17 F.3d 1386 (11th Cir. Ala. 1994).

### Defense Expert Jeff Sedlik's Misconduct

Mr. Sedlik contacted Peter Hall while conducting research for his expert report. Mr. Sedlik emailed Peter Hall through his website, where Peter Hall advertises his services as a photographer. When the parties spoke, Mr. Sedlik asked Peter Hall what

sort of a photographer he was and pretended not to know that Peter Hall is currently a wedding photographer, despite having emailed Mr. Hall through his website. Mr. Sedlik then went on to explain that he was a regular photographer. He did not immediately reveal that he was an expert in the case and attempted to trick Mr. Hall into answering questions. Mr. Hall realized that Mr. Sedlik was not just a regular photographer and that Mr. Sedlik was lying to him. Mr. Hall chose not to respond to Mr. Sedlik, as he felt uncomfortable and deceived. Mr. Sedlik intentionally lied and attempted to trick Mr. Hall into providing information about his services and Cathrin Lorentz. (Exhibit A & B). Mr. Sedlik's behavior was wholly inappropriate.

Further, Mr. Sedlik has violated a subpoena duces tecum requesting documents, by failing to provide documents responsive to the subpoena. On August 26, 2010, Plaintiff served Defense Expert, Jeff Sedlik, with a subpoena duces tecum without deposition requesting the production of documents. Rather than responding to the subpoena, defense counsel sent a letter to the undersigned stating that Mr. Sedlik would not respond to the subpoena unless the Plaintiff agreed to pay an approximate value of $9,450.00. (Exhibit E). Under Fed. R. Civ. P. 26(a) and (e) Mr. Sedlik was required to disclose all bases of his expert opinions and to timely supplement his expert disclosures upon discovery of an omission. Mitchell v. Ford Motor Co., 318 Fed. Appx. 821, 824 (11th Cir. 2009). The Plaintiff has pointed out to defense counsel that certain documents requested through the subpoena were required under FRCP 26 as bases of his opinions. (Exhibit E). The Plaintiff also filed a motion regarding the excessive fee requested by

Mr. Sedlik in responding to the subpoena.  Mr. Sedlik has conditioned his response to the subpoena on the agreement to pay a fee approximating $9,500.   Mr. Sedlik has refused and failed to provide the requested documents pursuant to FRCP 26 and has refused to significantly lower his rate or even acknowledge that his rates for merely gathering documents in his possession, are unreasonable.  Instead the defendants have contended that none of the requested documents were required under FRCP 26 and that Mr. Sedlik's rate, which includes both his and his staffs hourly rates and inordinate copy fees, are actually reasonable.[2]  Mr. Sedlik, instead of responding to the subpoena in a timely fashion and requesting an appropriate fee for his time, has stonewalled the Plaintiff and prevented the Plaintiff from receiving discovery.  Giving the Plaintiff a choice of paying nearly $9,500 for discovery is wholly burdensome, an attempt to extort the plaintiff, and essentially an outright refusal to comply with a courts order.[3]

"Fed. R. Civ. P. 37(c)(1) states that when "a party fails to provide information or identify a witness as required by [Fed. R. Civ. P.] 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Rule 37 allows the district court to exclude a witness as a sanction for a Rule 26 violation." Mitchell at 824.

Furthermore, defense counsels conduct is sanctionable as it relates to Mr. Sedlik's

---

[2] Mr. Sedlik is charging $650 an hour for his work, $200 for his staffs work and is estimating six to nine hours of work on his behalf and three to four hours of work on his staffs' behalf. Mr. Sedlik is also seeking to charge a copy fee of $1 a page.

[3] To put Mr. Sedlik's behaivor in perspective, the Plaintiff's expert, lee Gordon and Paul Miniard, provided thorough responses to Defendants subpoenas in a timely fashion and, after responding, they invoiced approximately $965 and $431 to the undersigned, respectively, for their efforts in responding.(Exhibit G)

refusal to comply with two separate court orders. Under the Model Rules of Professional Conduct 5.3(b) "a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer."

The defendants have not only violated the subpoena as stated above but have also violated the court's August 8, 2010 order [D.E. 188]. On July 29, 2010, the plaintiff moved to strike the Defendant's expert and expert witness report for failing to file the report in a timely fashion. The court granted the Plaintiff's motion in part, ordering that the defendants submit a "complete" expert report no later than August 20, 2010. The court granted an extension until August 20, 2010 to complete expert disclosures in compliance with F.R.C.P. 26. The court specifically stated that "if an expert report is incomplete and fails to comply with this order or the rule, that expert in question shall be excluded under rule 16 and 37." Throughout this order the court explains that Defendants failure to provide their expert report in a timely fashion was inexcusable and that an expert can be stricken for failure to comply with the express disclosure requirements of F.R.C.P 26. The court noted that it had already issued an order expressing its intention to strictly enforce the courts deadlines. The Defendants have not only directly violated this order but have also filed a burdensome motion with the court asking for another discovery extension!

On August 20, 2010 the undersigned received an email from Mr. Sedlik containing what he referred to as his "Preliminary" expert report. (Exhibit F). Further,

the Defendants have essentially admitted that his report was incomplete in their recent motion for extension of the discovery deadline. The Defendants have claimed that Mr. Sedlik has been unable to complete evidentiary investigation for his expert reports and are seeking more time for discovery despite the courts granting of multiple discovery extensions in the instant action. Mr. Sedlik's report is incomplete, in part, due to his alleged inability to receive information from Peter Hall, a witness who has been disclosed and available for a deposition since November 2009. (Exhibit D).

Any deficiency in Mr. Sedlik's report should be considered a violation of the courts scheduling order. The court set a scheduling order and even granted an extension of the deadline to conduct expert discovery until August 14, 2010. Both the defendants and Mr. Sedlik have admitted to an incomplete report. Any incompleteness is due to the defendants' own failure to conduct adequate discovery during the discovery period. The undersigned has also noted incomplete findings in Mr. Sedlik's report, including his failure to submit certain underlying documents supporting opinions reached in the report (as requested in the subpoena discussed above).[4]

As the district court found in <u>Olympic Coast Inv., Inc. v. Seipel,</u> 210 Fed. Appx.

---

[4] On August 26, 2010, Plaintiff served Defense Expert, Jeff Sedlik, with a subpoena duces tecum without deposition requesting the production of the following documents: (1) Copy of all correspondence including electronic correspondence between you and the defendants; (2) Copy of all correspondence between you and the defense counsel; (3)All versions of report prior to the version produced to Plaintiff.: (4) Copy of all notes including electronic notes of conversations with all witnesses including defendants; (5)Copy of all notes including electronic notes of all conversations with defense counsel; (6)All billing and time records for the within matter; (7) All reports written in the past five (5) years; (8) List of all cases participated in within the past ten (10) years as a witness and as a party; (9) Names and addresses of all lawyers for whom you consulted in the past five (5) years. Documents 1, 2, 4, 5, containing facts and data considered by the expert in writing his report. As such, these documents should have already been produced pursuant to FRCP 26 (a)(2)(B).

595 (9th Cir. 2006), it is a violation of a scheduling order to submit an incomplete discovery report.  In Olympic Coast Inv, the court found that OCI violated the district court's order by submitting incomplete expert reports. "Because OCI's expert reports were deficient, the district court reasonably concluded that OCI failed to comply "with the court's [scheduling] order in this case, which required that experts' reports be complete and consistent with the requirements of Rule 26(b)." Id at 3*. "If a party or party's attorney violates a scheduling order, the district court may impose sanctions under Rule 16(f) directly against a party's attorney. See Fed. R. Civ. P. 16(f) (empowering district courts to "require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees"). Id; see also Cash Energy v. Weiner, 1996 U.S. App. LEXIS 5820 (striking portions of the expert report as a sanction for a parties failure to comply with scheduling deadlines and court orders); see also Ortiz-Rivera v. Mun. Gov't of Toa Alta, 214 F.R.D. 51 (D.P.R. 2003) (finding that Plaintiffs' late filing of their expert reports violated a Court order as well as Rule 26(a)(2)(C), and that it was within the courts discretion to implement the sanctions designated under Rule 37(c)); see also Dean by Williams v. Watson, 1994 U.S. Dist. LEXIS 17724 (N.D. Ill. Dec. 1, 1994) (excluding evidence as a sanction for an experts noncompliance with a court order).

Not only has the defense attorney and defense expert violated the scheduling order by submitting an incomplete report, but they have also burdened the court with

another motion to extend the discovery deadline despite the fact that they had ample time and opportunity to complete discovery. The defendants should be forced to take complete responsibility for their choices, including their outright failure to adhere to the scheduling deadlines. Moreover, the defendants are now abusing the court in an attempt to reopen discovery and delay the progress of this case. The court in <u>Young v. Office of the United States Senate Sergeant at Arms</u>, 217 F.R.D. 61, 66 (D.D.C. 2003) found that the plaintiff had delayed the progress of her case, interfered with the defendants ability to defend itself, wasted judicial resources and demonstrated disrespect for the judicial process. The court found this to be sanctionable conduct.

The undersigned requests that the court apply appropriate sanctions including, but not limited to, striking Jeff Sedlik as an expert, striking Jeff Sedlik's expert report, striking portions of Jeff Sedlik's report pertaining to Frode Jensen, Espen Knudsen and Peter Hall, striking Frode Jensen and Espen Knudesn's declarations, disqualifying defense counsel and and/or awarding attorneys fees to the plaintiff.

The undersigned has made a good faith effort to confer with defense counsel prior to filing this motion in accordance with S.D. Local Rule 26.1(I) and 7.1.A.3 (a).

**WHEREFORE**, Plaintiff, CATHRIN LORENTZ, respectfully requests this Honorable Court to enter an Order granting Plaintiff's Motion as set forth herein.

Respectfully submitted,

**JOHN B. OSTROW, PA**


By: ___/s/ John B. Ostrow___
    JOHN B. OSTROW
    Florida Bar Number: 124324
    STEPHEN A. OSTROW
    Florida Bar Number: 182338
    MORGAN P. OSTROW
    Florida Bar Number: 70188

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel on the attached service list this 1st day of November, 2010.


**JOHN B. OSTROW, PA**
Counsel for Plaintiff
Courthouse Tower, Suite 1250
44 West Flagler Street
Miami, Florida 33130
Telephone: (305) 358-1496
Facsimile: (305) 371-7999


By: ___/s/ John B. Ostrow___
    JOHN B. OSTROW
    Florida Bar Number: 124324
    STEPHEN A. OSTROW
    Florida Bar Number: 182338
    MORGAN P. OSTROW
    Florida Bar Number: 70188

*Lorentz v. Sunshine Health, et al.*
CASE NO.: 09-CIV-61529-MORENO/TORRES
PAGE 19 OF 19

## SERVICE LIST

*<u>Counsel for Defendants</u>*
Kevin P. Crosby, Esq.
Evan D. Appell, Esq.
Jeffrey T. Kuntz, Esq.
**GRAY ROBINSON PA**
401 East Las Olas Boulevard
Suite 1850
Fort Lauderdale, Florida 33301
954-761-8111 – TEL
954-761-8112 – FAX