**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 09-CIV-61529-MORENO/TORRES

CATHRIN LORENTZ,

       Plaintiff,

vs.

SUNSHINE HEALTH PRODUCTS, INC.,
a Florida corporation, and CATHIE
RHAMES,

       Defendants.

_____/

**PLAINTIFF's MOTION TO STRIKE**
**PORTIONS OF JEFF SEDLIK'S EXPERT REPORT**

    **COMES NOW,** the Plaintiff, CATHRIN LORENTZ, by and through undersigned

counsel, hereby files this Motion to Strike Portions of Jeff Sedlik's expert report and, and

states as follows:

    Defense expert, Jeff Sedlik, filed an expert report on August 20, 2010. Jeff

Sedlik's report is fraught with unfounded conclusions and opinions. In portions of Mr.

Sedlik's report, he provides opinions regarding issues on which he is not qualified to

testify. In addition, Mr. Sedlik provides opinions based on out of court statements and

hearsay testimony, circumventing the hearsay rule by offering non-expert inadmissible

testimony. The report contains opinions and conclusions which exceed Mr. Sedlik's

expert designation.

    The Defendants initially disclosed Jeff Sedlik on June 8, 2010. In the defendants'

disclosure they provided Mr. Sedlik's name and address and stated the following:

> "Mr. Sedlik will testify regarding industry standards and practices in, including but not limited to, the modeling, photography and advertising industries, compensation in the modeling industry, damages and an analysis of the facts of the instant case."(Exhibit A).

In the beginning of Mr. Sedlik's report, he discusses the subjects for which he will provide opinions and his qualifications for providing those opinions. He states the following:

> "My opinions are based in part on more than a decade of service in high-level positions in trade associations and standard-setting bodies in the photography industry.  In addition, I have owned and operated a publishing company for more than a decade and have been a nationally recognized advertising photographer for 25 years, working with many clients and modeling agencies, observing and interacting with large numbers of professional photographers, modeling agencies, models, advertising agencies, design firms, corporate clients and other in the United States and other countries." (Exhibit B, p.1)

Mr. Sedlik goes on to discuss his qualifications, which include his involvement with a variety of fields including photography, advertising, publishing, art, museums, image licensing, and intellectual property. (Exhibit B, p.2-4).  Mr. Sedlik also provides his Curriculum Vitae as Exhibit A to his report.  Mr. Sedlik purports to be an expert with experience in a variety of fields. (Exhibit B).  However, Mr. Sedlik is not and does not claim to be an expert in computer forensics, computer science, or any other field related to computers, emails, data or the authenticity of emails.  Mr. Sedlik is not qualified and was not designated to provide opinions regarding the authenticity of emails.  Further, Mr. Sedlik is not an expert and is not qualified or designated to provide opinions in psychology, law, the legal standards for "bad faith" conduct, or any

behavioral science to opine on Ms. Lorentz's conduct.

The Federal Rules of Evidence 702 permits expert witnesses to testify about any form of specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact in issue so long as they are qualified as an expert by knowledge, skill, experience, training, or education.  Since Mr. Sedlik is not qualified or designated to opine on Ms. Lorentz's conduct or the authenticity of emails, he should not be permitted to provide such testimony in his report.

### **Plaintiff's Conduct**

In Section 5.C of Mr. Sedlik's report, he discusses the "Interaction between Sunshine and Lorentz."  Throughout this section Mr. Sedlik discusses the testimony of the parties and concludes that Ms. Lorentz has provided false testimony and that Ms. Lorentz was, in fact, aware of Sunshine's use of her photographs. (Exhibit B, p.18).  Mr. Sedlik goes on to discuss the email communications between Ms. Lorentz and Ralph Morton and the alleged telephone communications, concluding that Lorentz spoke with Mr. Morton and that the communications reflect Lorentz's "acceptance of Morton's offer." (Exhibit B, 19-21).   Mr. Sedlik provides the opinion that "Sunshine's communications demonstrate Good Fath" and that "Lorentz's communications Demonstrate Bad Faith." (Exhibit B, 21-22).   Further, Mr. Sedlik discusses the acquisition of the images and provides the opinion that Mr. Morton received the images at issue via email from Ms. Lorentz and that the disappearance of Lorentz's images on her website was caused by Lorentz's webmaster. (Exhibit B, p 23).

Mr. Sedlik is not qualified to provide the opinions and conclusions discussed in Section 5.C of his report.  Mr. Sedlik has simply compared testimony and evidence in the case and concluded that Cathrin Lorentz has lied, acted in Bad Faith, entered into an agreement with Mr. Morton, provided him with all the photographs, and hidden photographs from her website.  Mr. Sedlik has no expertise to opine on these issues, especially on the issue of "bad faith" vs. "good faith" conduct.  Mr. Sedlik is not an attorney, legal scholar, psychologist or any other sort of expert with qualifications to reach such opinions.  He does not even apply a test for what may be considered "bad faith" or "good faith" conduct.

Mr. Sedlik is not qualified to conclude that the communications evidenced acceptance of an alleged agreement by Ms. Lorentz's.  Mr. Sedlik is not a contracts expert.  He has absolutely no qualification to support any opinion as to whether an agreement was reached or not.

Mr. Sedlik is not qualified to opine on the truthfulness of Lorentz's testimony.  Despite any alleged contradictions or differences between Mr. Morton and Ms. Lorentz's account of the facts at issue, Mr. Sedlik is not a legal forensics expert, lie detection, or ethics expert.  He is simply not fit to provide conclusions regarding the truthfulness of Ms. Lorentz's testimony.   It is for the trier of fact to make such conclusions, not the expert.

Moreover, Mr. Sedlik is not qualified to testify as to the acquisition of the images in question.  Mr. Sedlik is not a computer forensics' expert.  There is absolutely no

evidence that Ms. Lorentz emailed more than one image to Mr. Morton and Mr. Morton has testified that it is possible that he acquired some images from the Plaintiff's website. Ms. Lorentz's web designer has not been deposed and has not testified as to whether he removed images from Ms. Lorentz's website.  Mr. Sedlik not only lacks expertise to provide any opinions as to the acquisition or disappearance of web images, but also lacks testimonial and factual support for those conclusions, which would at the very least, require a forensic examination of the defendants computers.[1]

"[A] witness qualified as an expert by knowledge, skill, experience, training, or education" is admissible if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Payne v. Redmond Park Hosp., LLC, 2010 U.S. App. LEXIS 17852 (11th Cir. 2010) (citing Fed. R. Evid. 702); see also Hendrix v. Evenflo Co., 255 F.R.D. 568 (N.D. Fla. 2009) ("Specifically, in deciding whether to admit expert testimony the trial court must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." Citing City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562-63 (11th Cir. 1998)).

---

[1] Plaintiff twice requested an order seeking to conduct a forensic examination of defendants' computer which was opposed by defendants and denied by the court.

Mr. Sedlik's testimony is not the product of reliable principles or methods.  In fact, Mr. Sedlik offers no method for which he reaches the conclusions in Section 5.C. Mr. Sedlik simply looked at conflicting testimony and decided to side with his employer, the defendants.  Mr. Sedlik's "conclusions" discussed herein were not based on any sort of expertise, let alone the expertise for which Mr. Sedlik was designated as a witness.

Expert testimony is admissible where it is "the kind that enlightens and informs lay persons without expertise in a specialized field." United States v. Burchfield, 719 F.2d 356, 357 (11th Cir.1983). In the language of Fed.R.Evid. 702, such "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Id.  If an expert is not qualified in a particular field and does not assist the jury based on his qualifications or knowledge in that field, then that expert's testimony is inadmissible. United States v. Paul, 175 F.3d 906, 911 (11th Cir. 1999).  In other words, if an experts skill, experience, training and education as an expert does not make him more qualified to testify as an expert on a particular issue than a lay person, that testimony should be excluded. Id at 912 (finding that a legal expert was not qualified to provide opinions on handwriting, as the legal expert's opinions were based on articles, all of which could have been read and used by a lay person in reaching the same opinions); see also Geico Cas. Co. v. Beauford, 2007 U.S. Dist. LEXIS 61379 (M.D. Fla. 2007) (finding that an expert qualified to opine as an insurance industry claims adjuster, manager, and extra-contractual liability specialist was not qualified as a legal

expert and could not express legal opinions in her testimony).

"To be admissible under rule 704, an expert's opinion on an ultimate issue must be helpful to the jury and also must be based on adequately explored legal criteria." Hanson v. Waller, 888 F.2d 80.6, 812 (11th Cir. 1989). "When the trier of fact is 'entirely capable of determining' issues in the case 'without any technical assistance from . . . experts,' expert testimony is unhelpful and must be excluded from the evidence." City of Tuscaloosa, 158 F.3d at 565; see also United States v. Rouco, 765 F.2d 983, 996 (11th Cir. 1985). Otherwise, there is a risk the trier of fact will give the expert testimony undue weight on account of its special status. See Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, 402 F.3d 1092, 1111 (11th Cir. 2005) (holding that expert testimony is not helpful when it offers nothing more than what lawyers provide in closing arguments) (quoting Frazier, 387 F.3d at 1262-63). Finally, because of the potentially misleading effect of expert evidence, see Daubert, 509 U.S. at 595, 113 S.Ct. at 2798, on occasion expert opinions that otherwise meet admissibility requirements may still be excluded under Fed. R. Evid. 403. Exclusion under Rule 403 is appropriate if the probative value of otherwise **admissible** expert testimony is substantially outweighed by its potential to confuse or mislead the jury, or if the testimony is cumulative or needlessly time consuming. See, e.g., Hull v. Merck & Co., Inc., 758 F.2d 1474, 1477 (11th Cir. 1985) (per curiam) (admission of speculative and "potentially confusing testimony is at odds with the purposes of expert testimony as envisioned in Fed. R. Evid. 702"); see also United States v. Stevens, 935 F.2d 1380, 1399 (3d Cir. 1991) (expert testimony

properly excluded because probative value was outweighed by concerns of "undue delay, waste of time, or needless presentation of cumulative evidence")." Hendrix v. Evenflo Co., 255 F.R.D. 568, 579 (N.D. Fla. 2009).

Mr. Sedlik's expertise in photography, advertising and modeling does not qualify him to opine on Ms. Lorentz's behavior, testimony, truthfulness, communications or alleged agreement with Ralph Morton.  Mr. Sedlik has simply looked at a conflicting set of facts and chosen to side with one set, as opposed to the other.  Mr. Sedlik has failed to apply any methodology to support these opinions.  Any lay person could do the same thing.

"In Daubert, the Supreme Court held that Federal Rule of Evidence 702 controls decisions regarding the admissibility of expert testimony. The Supreme Court declared that under rule 702, when 'faced with a proffer of expert scientific testimony … the trial judge must determine at the outset pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.' United States v. Paul, 175 F.3d 906, 911 (citing Daubert, 509 U.S. at 592, 113 S. Ct. 2786).  "The Daubert factors include: (1) whether the theory or technique the expert employs is generally accepted in the scientific community; (2) whether the theory has been subject to peer review and publications; (3) whether the theory can and has been tested; and (4) whether the known or potential rate of error is acceptable." Id. "In Kumho Tire Company, Ltd. v. Carmichael, the Supreme Court held that  Daubert 's "gatekeeping" obligation, requiring the trial judge's

inquiry into both the expert's relevance and reliability, applies not only to testimony based on "scientific" testimony, but to all expert testimony. United States v. Paul, 175 F.3d 906 (citing Kumho, 526 U.S. 137, 119 S. Ct. 1167, 1174, 143 L. Ed. 2d 238,(1999)); see also McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253 (11th Cir. 2002) (applying Daubert). "Regardless of whether the court considers some or all of these factors, at all times its focus must be on the methodology and principles used by the expert to reach his conclusions, not the conclusions themselves." Hendrix at 579 (citing McDowell v. Brown, 392 F.3d 1283, 1298 (11th Cir. 2004), which found that expert testimony must be more than a subjective belief or unsupported assumption). "'Leaps of faith' unsupported by good science preclude the admission of expert testimony.' Id (citing Rider v. Sandoz Pharm. Corp., 295 F.3d 1194, 1202 (11th Cir. 2002)).

Additionally, courts have found that no expert is "'permitted to opine on the credibility or consistency of others' testimony. Listening to testimony and deciding whether it is contradictory is the "quintessential jury function of determining credibility of witnesses.' Lipson, 46 F. Supp. 2d at 763. An expert may not substitute his judgment for the jury's. 'When this occurs, the expert acts outside of his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed determinations.' United States v. Jacques Dessange, Inc., No. S299CR1182, 2000 U.S. Dist. LEXIS 3597, at *4 (S.D.N.Y. March 21, 2000)." Crowley v. Chait, 322 F. Supp. 2d 530 (D.N.J. 2004).

Mr. Sedlik's opinions expressed in section 5.C of his report completely fail the

<u>Daubert</u> test and the Eleventh Circuit's requirements for providing reliable expert testimony.  Mr. Sedlik has failed to employ any theory or technique for reaching the conclusions discussed above, let alone a theory that would be accepted in the scientific community.  He has stepped outside of his area of expertise and provided non-expert opinions.  Mr. Sedlik should not be permitted to provide opinions regarding Ms. Lorentz's testimony, the truth of her testimony, whether she's acted in good or bad faith, whether the defendants have acted in good or bad faith, whether there was a legitimate agreement between the parties, the communications between the parties, the acquisition of the images, or the disposition of Ms. Lorentz's website.  As a result, section 5.C and any other portion of Mr. Sedlik's report referencing the issues discussed herein, should be striken.

## **<u>Email Authenticity</u>**

Mr. Sedlik was not designated as a computer expert and he admits in his report that he is not a computer forensics expert.  He states that he has recommended that Sunshine contract with a computer forensics expert to verify the email paths.  Yet, he concludes that a "cursory examination of the path data in the source code underlying the digital copies of the original emails sent by Lorentz to Morton indicates that all of these emails were sent to Morton via 'Mail2World' host servers." Mr. Sedlik goes on to discuss the email "paths" and concludes that "…the paths, when considered in the context of other testimony, evidence and the fact pattern in this matter, provide compelling indication that Lorentz sent the emails." (Exhibit B, p.19-20).

As explained above, the <u>Federal Rules of Evidence 702</u> require that an expert witness be qualified to testify about any form of specialized knowledge.  Further, assumptions, without causal evidence or methodological analysis are often times inadmissible. <u>In re TMI Litig.</u>, 193 F.3d 613, 667-68 (3d Cir. 1999). Conclusions based only on an expert's experience, and opinions based on methods that are not generally accepted or lack a testable hypotheses often fail under the <u>Daubert</u> standards. <u>Elcock v. Kmart Corp.</u>, 233 F.3d 734, 746 (3d Cir. 2000).

Mr. Sedlik purports only to be a "photo forensics expert with experience in analyzing photographs including photographs transmitted by email…" (Exhibit B, p.19).  In Mr. Sedlik's extensive resume, he has no reference to computer forensics, knowledge of email paths or any other computer science background.  As such, Mr. Sedlik lacks the knowledge, skill, experience, training, and education to opine on the authenticity of the email communications between the parties.  Moreover, Mr. Sedlik has failed to provide any sort of reliable theory or technique for verifying the authenticity of the email paths.

To make matters worse, the undersigned has twice moved the court to permit inspection of the defendant's computers in order to determine the authenticity of the emails.  The Defendants have vigorously opposed Plaintiff's requests, refusing to make their computers available for inspection. Yet now, the defendants' are attempting to verify the authenticity of these emails through their Expert Witness who is clearly not qualified to opine on such matters.  Further, in light of Mr. Sedlik's confessed advice to

the defendants that they employ a computer forensics expert, a fair conclusion is drawn that the reason they have not done so, is because the examination would reveal evidence adverse to the defendants.

## Hearsay Testimony

Mr. Sedlik has provided summaries and reached multiple conclusions based on out-of-court statements made by various witnesses in the instant action. In section 5.D. of Mr. Sedlik's report he discusses all considerations for evaluating the photographs at issue. In Section 5.D part 2(a)(i), he discusses "authorship." Mr. Sedlik provides an entire page on Peter Hall, within which he talks about conversations with Mr. Hall and things that Mr. Hall said to him over the phone. (Exhibit B, p. 25). In Section 5.D part 2(c) Mr. Sedlik discusses a conversation with Reider Martinsen regarding images of Cathrin Lorentz. (Exhibit B, p. 27). In Section 5.D part 2(e) Mr. Sedlik discusses conversations with Mr. Frode Jensen and Mr. Espen Knudsen. (Exhibit B, p. 28). Mr. Sedlik goes on to reference his conversations with Mr. Jensen and Mr. Knudsen throughout his report. (Exhibit B, p. 30-65). Mr. Sedlik adds various opinions and issues allegedly told to him by these witnesses, in private conversations, to support the conclusions reached in his report regarding the photographs at issue, the legitimacy of Ms. Lorentz's modeling career, and the modeling fees received by Lorentz. (Exhibit B. p. 51, 56). Specifically, in four pages of his report, Mr. Sedlik discusses Peter Hall, Espen Knudsen and Frode Jensen's out of court statements regarding Cathrin Lorentz. (Exhibit B. p. 57-60). In Section 5.H part 2, Mr. Sedlik opines on damages, using these out of

court statements to form the basis of his opinions. (Exhibit B p. 57-60).  From these statements, Mr. Sedlik concludes that the Plaintiff is an inexperienced model and renders an opinion as to the modeling fees and actual damages owed to the Plaintiff in the instant action.  In addition to the testimony discussed above, Mr. Sedlik adds out of court statements by "various modeling agencies" which discuss the yearly usage fee for a models image. (Exhibit B. p 61-64).  Mr. Sedlik provides no affidavit, declaration, email, or any other such proof of the statements supposedly provided by these agencies. Lastly, Mr. Sedlik adds hearsay testimony by an individual named Jeb Adams who claims to be Jay Bersnstein's god son. (Exhibit B., p. 53, 54).

"Rule 703 does not authorize admitting hearsay on the pretense that it is the basis for expert opinion when, in fact, the expert adds nothing to the out-of-court statements other than transmitting them to the jury." Sterling v. Provident Life & Accident Ins. Co., 619 F. Supp. 2d 1242 (M.D. Fla. 2009).  While Rule 703 allows an expert to base an opinion or inference on hearsay evidence, it must be based on the type of evidence that would be reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject .  United States v. Umana, 2010 U.S. Dist. LEXIS 46910 (W.D.N.C. Apr. 9, 2010).  The defendants bear the burden of proving that an expert in the field of advertising, photography and modeling would reasonably have relied on these types of otherwise inadmissible hearsay statements when forming their opinions. Jamsports & Entm't, LLC v. Paradama Prods., 2005-1 Trade Cas. (CCH) P74, 672 (finding that the expert may not base his opinions on out of court statements as

he provided no basis for his claim that persons in his field would reasonably rely upon these types of otherwise inadmissible hearsay statements, whose veracity has not been subjected to testing via cross examination or otherwise). An expert in the field of modeling, advertising, or photography would not rely on out of court statements made by hostile witnesses who were paid by the defendants (one of whom has threatened to sue the plaintiff). Neither Espen Knudsen nor Frode Jensen have been subject to cross examination, both have been paid by the defendants and both are hostile witnesses. Further, both have provided personal opinions regarding Ms. Lorentz's career, a subject that neither has actual familiarity with. An expert in the modeling field, especially, would not rely on biased and speculative third party opinions when reaching conclusions regarding a models career.

Further, the testimony of an expert who communicates out-of-court testimonial statements of cooperating witnesses under the guise of an expert opinion is inadmissible. United States v. Mejia, 545 F.3d 179 at 198 (2nd Cir. 2007). "When, in fact, the expert adds nothing to out-of-court statements other than transmitting them to the jury . . . Rule 703 is simply inapplicable and the usual rules regulating the admissibility of evidence control." Langbord v. United States Dep't of the ..., 79 Fed. R. Evid. Serv. (Callaghan) 688 (E.D. Pa. 2009). In Hot Wax, Inc. v. Warsaw Chem. Co., Inc., 45 F. Supp. 2d 635, 639 (N.D. Ill 1999), the court found that the experts testimony was premised entirely on out-of-court statement. The court determined that the "expert testimony" was, in reality, hearsay statements from witnesses that were dressed up to look like

expert testimony. Id.  The court concluded that even if the testimony were to be included, it would be entitled to "little, if any, weight." Id at 639 (also citing <u>Cummins v. Lyle Indus.</u>, 93 F.3d 362, 372 (7th Cir. 1996) (affirming district court determination that expert testimony was inadmissible where that testimony was based on "information from unidentified individuals on unspecified dates); see also <u>James Wilson Assoc.</u>, 965 F.2d 160 at 173 (7th Cir. 1992) (rejecting expert testimony where the expert simply testified "for the purpose of vouching for the truth of what the engineer had told him -- of becoming in short the engineer's spokesman"); see also <u>Gong v. Hirsch</u>, 913 F.2d 1269, 1272-73 (7th Cir. 1990) (rejecting expert testimony where the "information sought to be relied on . . . is merely a conclusory statement, made by a doctor who was not the treating physician at the time of the illness in question. . . .")); see also <u>Law v. Nat'l Collegiate Athletic Assoc.</u>, 185 F.R.D. 324, 341 (D. Kan. 1999) ("The NCAA basically presented [the expert] as a channeler, seeking to present non-expert, otherwise inadmissible hearsay through the mouth of an economist."); <u>State v. Towne</u>, 142 Vt. 241, 246, 453 A.2d 1133 (1982) (a testifying physician may not act as a mere "conduit" for another physician's opinion).

The court in <u>Lyman v. St. Jude Med. S.C., Inc.</u>, 580 F. Supp. 2d 719, 2008 U.S. Dist. LEXIS 42015, 2008 WL 2224352 (E.D. Wis. 2008) excluded as unreliable expert testimony on behalf of the defendant. The judge in Lyman quotes <u>Loeffel Steel Products, Inc. v. Delta Brands, Inc.</u>, 387 F. Supp. 2d 794, 808 (N.D.Ill. 2005) in concluding that Rule 703 was not intended to eliminate the hearsay rule and to allow a witness, under the guise

of giving expert testimony, to become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." See <u>Lyman</u>, at *5.

Mr. Sedlik offers the out of court statements of Mr. Knudsen and Mr. Jensen solely for the purpose of transmitting hearsay testimony.  Mr. Sedlik does not make an effort to interpret or analyze this testimony.  Specifically, in pages 57 through 60 of his report, Mr. Sedlik provides Peter Hall, Espen Knudsen and Frode Jensen's out of court statements regarding Cathrin Lorentz.   Mr. Knudsen and Mr. Jensen discuss Cathrin's skill and activity as a model.  Following the pages where Mr. Sedlik quotes these witnesses, he concludes that Cathrin Lorentz was not a skilled or active model and goes on to discuss damages.  Mr. Sedlik fails to examine these witness's statements.  Rather, he simply uses his report as an effort to transmit hearsay and non-expert hostile opinions.  Mr. Sedlik does not simply offer an opinion based on this testimony as permitted by Rule 703.  Rather, he adopts hearsay on the pretense that it is the basis for his expert opinion when, in fact, he adds nothing to the out-of-court statements. (Exhibit B 57-60).

The court in <u>Crowley v. Chait</u>, 322 F. Supp. 2d 530 (D.N.J. 2004) refused to allow an expert opinion where that opinion was based on summaries prepared by plaintiff's counsel of eight depositions that had been taken in the case.[2] The court noted: "[T]o make [the expert] the mouthpiece of these deponents, and to allow him to offer testimony to a jury as to conclusions he has reached on the basis of this highly filtered

---

[2] We do not know what summaries Mr. Sedlik relied upon because he did not produce any records to plaintiff in response to plaintiff's subpoena or pursuant to Rule 26.

version of events, is unacceptable." Id. at 547**.**  Mr. Sedlik is essentially concluding that Ms. Lorentz did not have a successful modeling career by using declarations of witnesses, which were presumably written by defense counsel and would also be considered "highly filtered."  Both Mr. Jensen and Mr. Knudsen give personal opinions regarding Cathrin Lorentz's career and worth of a model.  Mr. Sedlik copies and adopts these opinions.  He fails to use any analysis or methodology or even consider the testimony of Plaintiff's agent when reaching the majority of his conclusion, including his conclusion that Cathrin Lorentz was not a well paid or successful model.  Rather, Mr. Sedlik simply adopts opinions given by non-experts in the form of hearsay statements.

As required in <u>Daubert</u>, an "expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation." <u>Daubert</u>, 509 U.S. at 590. Where are the methods and procedures used by Mr. Sedlik in concluding the legitimacy of Ms. Lorentz's career?

Further, Mr. Sedlik and the defendants should be barred from introducing the testimony of Frode Jensen and Espen Knudsen. "The fact that plaintiff's **expert** reviewed the written **statements** as part of the foundation for his opinion does not mean the **statements** themselves are admissible. *See Nachtsheim,* 847 F.2d at 1270 ("[T]o say that Rule 703 permits an **expert** to base his opinion upon materials that would otherwise be **inadmissible** does not necessarily mean that materials independently excluded by the court by reason of another rule of evidence will automatically be

admitted under Rule 703.") (*internal citations omitted*). Plaintiff cannot rely on his **expert's** review of the written **statements** to circumvent the hearsay rule and introduce the **statements** into evidence." <u>Robenhorst v. Dematic Corp.</u>, 2008 U.S. Dist. LEXIS 30040 (N.D. Ill. 2008); see also <u>Tatum v. Cordis Corp.</u>, 758 F. Supp. 457, 463 (M.D. Tenn. 1991) (finding that hearsay evidence may be considered by a court only if the out-of-court declarant is available to testify as to the evidence at trial); <u>Banks v. Millar Elevator Servs. Co.</u>, 2000 U.S. Dist. LEXIS 2703 (E.D. Pa. 2000) (an expert cannot admit an out of court statement into evidence to prove truth of the matter asserted); see also <u>Payne v. Schneider Nat'l Carriers, Inc.</u>, 2010 U.S. Dist. LEXIS 89291 at 17* (S.D. Ill. 2010) (finding that the prejudicial effect and potential for jury confusion that would result from admitting  opinions based on hearsay statements into evidence outweighed the probative value).

Mr. Sedlik's report should be limited to exclude all statements made by Mr. Knudsen and Mr. Jensen which were introduced solely for the purpose of transmitting hearsay testimony.  The defendants have bought testimony from these witnesses and are now seeking to introduce it under the guise of an expert report.  Further, Mr. Sedlik's report should be limited to exclude all statements made by any other witness, including Peter Hall and Jeb Adams, which have been introduced solely for the purpose of transmitting hearsay testimony.  The undersigned also asks that the court prohibit the introduction of the declarations of these individuals into evidence, as they are inadmissible hearsay statements offered for truth of the matter asserted.

The undersigned has made a good faith effort to confer with defense counsel prior to filing this motion in accordance with S.D. Local Rule 26.1(I) and 7.1.A.3 (a). (Exhibit C).

**WHEREFORE**, Plaintiff, CATHRIN LORENTZ, respectfully requests this Honorable Court to enter an Order granting Plaintiff's Motion as set forth herein.

Respectfully submitted,

**JOHN B. OSTROW, PA**

By: ___/s/ John B. Ostrow_____
     JOHN B. OSTROW
     Florida Bar Number: 124324
     STEPHEN A. OSTROW
     Florida Bar Number: 182338
     MORGAN P. OSTROW
     Florida Bar Number: 70188

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel on the attached service list this 5th day of November, 2010.

**JOHN B. OSTROW, PA**
Counsel for Plaintiff
Courthouse Tower, Suite 1250
44 West Flagler Street
Miami, Florida 33130
Telephone: (305) 358-1496
Facsimile:  (305) 371-7999

By: ___/s/ John B. Ostrow_____
     JOHN B. OSTROW
     Florida Bar Number: 124324

STEPHEN A. OSTROW
Florida Bar Number:  182338
MORGAN P. OSTROW
Florida Bar Number:  70188

## SERVICE LIST

**_Counsel for Defendants_**
Kevin P. Crosby, Esq.
Evan D. Appell, Esq.
Jeffrey T. Kuntz, Esq.
**GRAY ROBINSON PA**
401 East Las Olas Boulevard
Suite 1850
Fort Lauderdale, Florida 33301
       954-761-8111 – TEL
       954-761-8112 – FAX