UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-civ-61529-Moreno/Torres

CATHRIN LORENTZ

        Plaintiff,
v.

SUNSHINE HEALTH PRODUCTS, INC.,
a Florida Corporation, and CATHIE RHAMES

        Defendants.
_____/

## DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
## FOR SANCTIONS AND TO STRIKE JEFF SEDLIK'S EXPERT REPORT

Defendants, Sunshine Health Products, Inc. and Cathie Rhames (the "Defendants"), by and through their undersigned counsel, hereby file their response to Plaintiff's Motion For Sanctions and To Strike Jeff Sedlik's Expert Report [D.E. 219] (the "Motion") and state:

### INTRODUCTION

Plaintiff's characterization of the undersigned, the Defendants, Defendants' expert and Defendants' UK counsel is outrageous and unwarranted. Plaintiff's allegations that Defendants and their representatives attempted to bribe witnesses is baseless and is merely an attempt to paint the Defendants and their representatives in a bad light as trial approaches. The undersigned takes offense to the allegations and to the outright deceptive attempt to twist the facts and circumstances that are at issue in the Motion. As will be set forth below, Defendants and their representatives have not committed any ethical violations nor have they violated any of this Court's orders. Therefore, the sanctions being sought by Plaintiff are unjustifiable and inappropriate given the facts at issue in the Motion.

**MEMORANDUM OF LAW**

I.  **Defense Counsel's Communications with Peter Hall**

Defendants' UK counsel, Rowel Genn, had a few conversations with Peter Hall over a period of several months.[1] Mr. Genn's conversations with Mr. Hall consisted of asking him questions about whether he took the photographs in issue in this action and whether he signed the purported assignments of copyright. See Genn decl. at ¶11. In each conversation, Mr. Genn started by asking Mr. Hall if it would be convenient for him to speak. See Genn decl. at ¶11. As stated in Mr. Genn's first declaration attached to the Motion, at all times he was respectful and courteous to Mr. Hall, and Mr. Hall confirmed as much in his last conversation with him. See Genn decl. at ¶13.

Mr. Hall was initially approached by Mr. Genn in May of 2010. In that and in all subsequent contact Mr. Genn had with Mr. Hall, Mr. Hall was never threatened, harassed nor bribed by Mr. Genn. See Genn decl. at ¶6.  Mr. Genn did tell Mr. Hall that the Defendants had the option of seeking a court order requiring him to give evidence, but that this could be avoided by his frank and full response to Mr. Genn's questions. See Genn decl. at ¶6. When Mr. Hall was asked by Mr. Genn to provide a statement, he was asked to tell the whole truth. He refused and said that he did not feel he wanted or needed to be involved in this case. See Genn decl. at ¶4.

In Mr. Genn's letter and in discussions with Mr. Hall, he indicated to Mr. Hall that he should take independent legal advice. See Genn decl. at ¶7.  This was an appropriate and proper statement for Mr. Genn to make to him and indicated to him that he was not being threatened or harassed. See Genn decl. at ¶7.

Mr. Hall said that he would not be willing to spend the money on taking independent advice, so Mr. Genn, on behalf of the Defendants, offered Mr. Hall a contribution of GBP500

---

[1] See second declaration of Rowel Genn attached and incorporated by reference hereto at **Exhibit "A"** at ¶11

towards his independent legal costs if he was agreeable to seek independent legal advice. See Genn decl. at ¶7.  There was no condition attached to what answers he would give except an express term that they be truthful. See Genn decl. at ¶7. It is quite appropriate and most certainly not bribery to offer to pay a witness some expenses they would incur in providing evidence and such an offer does not taint their evidence. See Genn decl. at ¶7. At no time in Mr. Genn's conversations with Mr. Hall did Mr. Hall indicate that he considered that offer – made in response to his statement that he would not pay for advice – to be inappropriate in any way. See Genn decl. at ¶7. Advising someone (and offering them the opportunity) to take independent legal advice is the antithesis of harassment or threatening behavior and is the proper and correct course of professional conduct in such a matter. See Genn decl. at ¶8.

Mr. Hall stated that he felt threatened by a statement that Frode Jensen may sue him. Mr. Genn's letter makes the position quite clear and states that Mr. Hall would be involved in such litigation if instituted. See Genn decl. at ¶9.  The potential matter itself was not discussed in any conversation with Mr. Hall. See Genn decl. at ¶9.  Based on his conversations with Mr. Hall, Mr. Genn is suspicious that Mr. Hall is working in alliance with the Plaintiff due to Mr. Hall's reluctance to provide simple answers to straight questions as to the origins of 12 photographs and some purported assignments. See Genn decl. at ¶9.

It is significant that there was no mention of any alleged improper conduct on Mr. Genn's part immediately following Mr. Hall's e-mail to Plaintiff's counsel on September 13, 2010. See Genn decl. at ¶10. Plaintiff's contentions that Mr. Genn was offering Mr. Hall GBP500 simply to provide answer is an attempt to misconstrue and misstate Mr. Genn's intentions and motives, to paint he and Defendants in a false light to this Court. No bribery was committed and no bribery was intended.

Moreover, Plaintiff has misconstrued the comments made by Mr. Genn to Mr. Hall about a potential lawsuit by Mr. Jensen against Ms. Lorentz. Mr. Jensen told Defendants' expert witness, Prof. Jeff Sedlik, that he was thinking about bringing a copyright action against Plaintiff and Mr. Hall. This message was merely being relayed to Mr. Hall by Mr. Genn and there was no threat made.

Plaintiff argues that the declarations of Frode Jensen and Espen Knudsen provided by Mr. Genn to Mr. Hall constituted an attempt to solicit favorable testimony. However, these declarations were merely provided in order to show Mr. Hall that the photographs being alleged to have been taken by Mr. Hall were in fact taken by Mr. Jensen and Mr. Knudsen. There was no attempt to "color Mr. Hall's opinion" as asserted by the Plaintiff. [2] Defendants were merely trying to obtain honest answers regarding the copyright registrations at issue in this case.

Plaintiff also alleges that, because the declarations were provided to Mr. Hall, that Defendants' counsel "has an inappropriate relationship with Frode Jensen." Aside from the fact that Plaintiff's argument is a non sequitur, Plaintiff has simply made a blanket statement with no factual support or any definition or explanation as to what is "inappropriate" about Defendants' contact with Mr. Jensen.

None of the factual scenarios set forth in the cases Plaintiff relies on to support her position regarding Mr. Genn's contact with Peter Hall are in any way analogous to the facts of the instant case. First, Plaintiff relies on *U.S. v. Moody* to support her contention that it is a criminal offense to give, offer or promise something of value to someone to give testimony under oath. 977 F.2d 1420, 1424 (11th Cir. 1992). However, in *Moody*, the defendant was found guilty of offering money directly to witnesses in exchange for <u>false</u> declarations. In the instant

---

[2] As distinguished from the *false statements* made by Plaintiff's counsel to Mr. Jensen to attempt to color Mr. Jensen's opinions of Defendants.

case, as noted *supra*, the Defendants were not attempting to pay Mr. Hall in order to receive his testimony (let alone false testimony). The Defendants were merely giving Mr. Hall the opportunity to seek independent legal counsel should he choose to do so. There was never any mention, nor any thought, that providing Mr. Hall with money to obtain independent counsel was preconditioned on his promise to provide certain testimony.

Plaintiff also relies on *Quiroz v. Superior Bldg. Maint., Inc*. 2008 WL 3540599 (S.D. Fla. 2008). Much like in *Moody*, the party in the action attempted to pay witnesses to provide false testimony. That factual scenario is simply not analogous to the facts of the instant case. Plaintiff continually mischaracterizes Defendants' attempt to provide Mr. Hall with an opportunity to obtain independent legal counsel as payment to provide certain predetermined testimony. That was not intended, nor did that occur.

Plaintiff's reliance on *In re Complaint of PMD Enterprises, Inc.* is also misplaced. In *PMD*, the Court found that payment to a witness for his time to review documents relevant to the case in order to help one of the attorneys prepare for trial was improper. 215 F.Supp.2d 519, 530 (D. N.J. 2002). The improper payment was made directly to the non-party witness for his help in preparing the case. *Id.* The payment offered to Mr. Hall was not for his services or preconditioned on his helping the Defendants in any way. It was simply an offer to help defray a portion of the cost of independent legal advice which, potentially, could have been detrimental to the Defendants.

Plaintiff also continually refers to Defendants' alleged "ex parte" contact with Mr. Hall to analogize this case to *PMD*. Plaintiff has had similar "ex parte" contact with Mr. Hall. Mr. Hall is not represented by counsel nor is he a party to this action. The facts in *PMD* dealt with communications with a witness who was represented by counsel. This was part of the reason the

court found the communications by counsel improper. *Id.* Clearly, that was not the case here. If Mr. Hall already had independent counsel, then independent counsel would have been necessary.

Similarly, in *RentClub, Inc. v. Transamerica Rental Finance Corp.*, 811 F. Supp. 651 (M.D. Fla. 1992), the plaintiff paid another parties' former chief financial officer to act as a trial consultant. *Id.* at 654. The Court awarded sanctions based on its findings that the payment made to the witness was for the sole purpose of disclosing his former employer's confidential financial information. *Id.* The factual scenario in *RentClub* is inapposite to the facts of instant case.

A witness may be compensated for the time spent preparing to testify or otherwise consulting on a litigation matter in addition to the time spent providing testimony in a deposition or at trial. See, e.g., *Centennial Mgmt. Servs., Inc. v. Axa Re Vie,* 193 F.R.D. 671, 679-80 (D.Kan.2000) (concluding that a fact witness was properly and reasonably compensated "for the time he lost in order to give testimony in the litigation, review documents produced in the litigation, and otherwise consult with [a party] and its counsel on matters related to the litigation").

Plaintiff has not cited any case law to support her position that Mr. Genn's actions were improper. Most of the cases cited by Plaintiff in support of her argument deal directly with parties attempting to pay witnesses for <u>false</u> testimony favorable to their case. That did not occur in the instant action. Therefore, Plaintiff's Motion should be denied.

II.     **Contact with Mr. Jensen and Mr. Knudsen**

At no time did Defendants compensate Mr. Jensen or Mr. Knudsen for any testimony in this matter. Defendants did, however, provide payment to Mr. Jensen and Mr. Knudsen for retroactive copyright licenses for the use of their photographs by Defendants. The execution of their affidavits was not conditioned on any payment and no unlawful payment was made.

6

Defendants merely compensated Mssrs. Jensen and Knudsen in good faith for the use of their photographs on Defendants' websites. If anything, Mssrs. Jensen and Knudsen were providing the first honest information regarding the photographs at issue in this action since Plaintiff has actively concealed their identify.

Plaintiff's counsel argues that Defendants have prejudiced the Plaintiff by taking the declarations of these individuals and prevented Plaintiff's counsel from examining them. Prof. Sedlik did not discover that someone (Frode Jensen and Espen Knudsen) other than Peter Hall was the photographer of some of the photographs at issue in this action until August 9, 2010. [3] However, Plaintiff's counsel has every right to contact Mr. Jensen (which they did) and Mr. Knudsen and speak with them regarding this case. Defendants have no objection to Mssrs. Jensen and Knudsen being deposed although Defendants do not have the ability to cause their appearances. Defendants counsel will take whatever steps are reasonably available to assist in the scheduling of depositions of these witnesses.

### III.  Prof. Sedlik's Contact with Peter Hall

Despite Peter Hall's allegation that Prof. Sedlik pretended to be a local photographer (i.e. UK photographer), no such communication ever took place. [4] The first time Prof. Sedlik ever communicated to Peter Hall was when he left him a voicemail. See Sedlik decl. at ¶3. When he left the voicemail, he told Mr. Hall that he was a photographer from Los Angeles attempting to confirm that Mr. Hall took certain photographs of the Plaintiff. See Sedlik decl. at ¶3. Prof. Sedlik never said anything in an attempt to trick or deceive Mr. Hall into speaking with him. See Sedlik decl. at ¶5.

---

[3] See second declaration of Jeff Sedlik attached and incorporated by reference hereto at **Exhibit "B"** at ¶2.
[4] See Sedlik decl. at ¶7.

When he eventually spoke with Mr. Hall on August 11, 2010, Mr. Hall informed Prof. Sedlik that Mr. Hall had spoken with the Plaintiff and that she had advised that she needed to consult with her attorneys before Mr. Hall could speak with Prof. Sedlik. See Sedlik decl. at ¶¶10-11. Mr. Hall advised Prof. Sedlik that he was told by Plaintiff not to speak with him until Plaintiff's attorneys directed him that it was clear for him to answer Prof. Sedlik's questions. See Sedlik decl. at ¶11. Neither Plaintiff's counsel nor Plaintiff have ever given such consent. Prof. Sedlik has not had any communication with Mr. Hall since their August 11, 2010 telephone conversation. See Sedlik decl. at ¶12.

### IV. Subpoena to Prof. Sedlik

Plaintiff argues that Prof. Sedlik has failed to provide documents responsive to the subpoena served on August 26, 2010.[5] Despite Plaintiff's failure to agree to the fees and costs Prof. Sedlik requested, and due to the imminence of trial, Prof. Sedlik agreed to provide documents responsive to the subpoena. Documents responsive to the subpoena were delivered to Plaintiff's counsel on November 15, 2010 via e-mail.

As noted by Prof. Sedlik, through the undersigned, all documents responsive to the subpoena would be provided as soon as Plaintiff and/or her counsel agreed to pay his fees and costs associated with compiling the documents.[6] As noted in Plaintiff's own subpoena, Prof. Sedlik was allowed to "condition the preparation of copies upon the payment in advance of reasonable costs of preparation," which Plaintiff's counsel has never been willing to discuss despite requests from Defendants' counsel.

Plaintiff goes on to argue that Prof. Sedlik's report is insufficient because he failed to provide the materials he considered that formed the bases of his opinions. However, Prof. Sedlik

---

[5] A copy of the subpoena issued to Prof. Sedlik is attached and incorporated by reference hereto at **Exhibit "C".**
[6] A copy of the September 8, 2010 correspondence from the undersigned to Plaintiff's counsel is attached and incorporated by reference hereto at **Exhibit "D".**

did, in fact, provide a list of all of the information and documents he used to reach his opinions. His expert report even includes a section that is titled "Materials Considered." See Exhibit "B" to expert report of Prof. Sedlik. Thus, his report clearly complies with Fed.R.Civ.P. 26.

Plaintiff also argues that certain documents requested in the subpoena were required to be produced without subpoena pursuant to Fed.R.Civ.P. 26. Plaintiff's subpoena requested the following documents:

1. Copy of all correspondence including electronic correspondence between you and the defendants.
2. Copy of all correspondence between you and the defense counsel.
3. All versions of report prior to the version produced to plaintiff.
4. Copy of all notes including electronic notes of conversations with all witnesses including defendants.
5. Copy of all notes including electronic notes of all conversations with defense counsel.
6. All billing and time records for the within matter.
7. All reports written in the past five (5) years.
8. List of all cases participated in within the past ten (10) years as a witness and as a party.
9. Names and addresses of all lawyers for whom you consulted in the past five (5) years.

None of the documents listed above fall within the ambit of Fed.R.Civ.P. 26 as documents Prof. Sedlik used to form the bases of his opinions.

Neither Defendants nor Prof. Sedlik have indicated that the expert report was not a final version and therefore incomplete. Plaintiff can not point to any correspondence evidencing that such representations were made. While the title of the report states that it is "preliminary," no inquiry was made by Plaintiff to confirm that this was, in fact, just a preliminary report. Plaintiff never asked Defendants' counsel about the issue nor indicated that it believed the report was

9

incomplete. Therefore, Plaintiff never conferred with Defendants as to this basis for seeking relief.

Plaintiff argues that Defendants' Motion for Sanctions and to Reopen Discovery (D.E. 212) is evidence that Prof. Sedlik's report is incomplete. However, that motion was not filed so that Prof. Sedlik could complete his expert report. That motion was filed for the purpose of obtaining the Court's permission to take the deposition of Peter Hall to determine whether or not he actually took the photographs at issue in this action.

Plaintiff relies on *Olympic Coast Inv., Inc. v. Seipel* stating that it is a violation of Fed.R.Civ.P. 26 to submit an incomplete discovery report. 210 Fed. Appx. 595 (9th Cir. 2006). However, in *Olympic Coast*, the Court found that the party:

> …violated the district court's order by submitting incomplete expert reports. None of the four documents Rhoades relies on as expert reports contained a complete statement of all opinions to which the experts would testify, nor did they disclose OCI's compensation arrangements or a listing of other cases in which the experts had testified at trial or by deposition within the preceding four years. *See* Fed.R.Civ.P. 26(a)(2)(B). Because OCI's expert reports were deficient, the district court reasonably concluded that OCI failed to comply "with the court's [scheduling] order in this case, which required that experts' reports be complete and consistent with the requirements of Rule 26(b)

*Id.* at 596. The Court's ruling was based the expert's failure to comply with the necessary requirements of Fed.R.Civ.P. 26. In this case, Prof. Sedlik fulfilled each requirement set forth in Fed.R.Civ.P. 26, and there are no "deficiencies" in his report as Plaintiff suggests in her Motion.

**V.     The Sanctions Being Sought Are Inappropriate And Unsupported**

Plaintiff's Motion seeks disqualification of the undersigned counsel, the award of attorney's fees to Plaintiff, the striking of Prof. Sedlik's report and his status as Defendants' expert witness and also to strike the declarations of Mssrs. Jensen and Knudsen. None of these sanctions are appropriate in the instant action.

10

While a court may order disqualification of counsel, motions to disqualify are viewed with disfavor as an extraordinary remedy that should not be granted unless absolutely necessary.[7] *In re Jet 1 Ctr., Inc.,* 310 B.R. 649, 654 (Bankr.M.D.Fla.2004); *First Impressions Design and Mgt., Inc. v. All That Style Interiors, Inc.,* 122 F.Supp.2d 1352, 1355 (S.D.Fla.2000) (noting that "disqualification of a party's chosen counsel is an extraordinary remedy not generally in the public interest-a remedy that should be employed only sparingly"); *Herschowsky v. The Guardianship of Herschowsky,* 890 So.2d 1246, 1247 (Fla. 4th DCA 2005*)* (explaining that "[i]t is well settled that disqualification, contrary to the wishes of counsel and client, should be resorted to rarely").

A client's choice of counsel is entitled to "substantial deference," and a movant seeking to sever that relationship through disqualification must meet a high standard of proof. *Jet 1 Ctr.*, 310 B.R. at 654; *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir.2003) (stating that the party bringing the motion to disqualify bears the burden of proving the grounds for disqualification) (citation omitted). "Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist." *In re BellSouth Corp.*, 334 F.3d at 961. A disqualification order "is a harsh sanction, often working substantial hardship on the client" and should therefore "be resorted to sparingly." *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n. 4 (11th Cir.1982).

Since there is absolutely no basis whatsoever for the disqualification of the undersigned, and a high burden exists in order to prove that disqualification is warranted, Plaintiff's Motion in that regard should be denied. Additionally, attorney's fees should only be granted in "narrowly defined circumstances" in federal court under the court's inherent power. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765 (1980). Generally, that power only exists when there is bad faith

---

[7] While Plaintiff has not filed a motion to disqualify the undersigned, she has requested that relief in her Motion.

11

such as willful disobedience of a court order. *Id.* The actions of the Defendants, their attorneys or their expert witness do not rise to a level even close to bad faith to warrant the award of attorney's fees to the Plaintiff.

Furthermore, there is no reason to strike the declarations of Mr. Jensen and Mr. Knudsen. Any allegation regarding the impropriety of their declarations is pure speculation and based on nothing other than wild accusations and assumptions. The Court should only strike an affidavit "when it is a conclusory argument, rather than a statement of fact, or when the affidavit is not based on personal knowledge." *Pashoian v. GTE Directories n/k/a Verizon Directories*, 208 F.Supp.2d 1293, 1297 (M.D.Fla.2002)(citing *Story v. Sunshine Foliage World, Inc.*,120 F.Supp.2d 1027,1030 (M.D. Fla. 2000)). Here, it is clear that the statements set forth in Mssrs. Knudsen and Jensen's declarations are not conclusory arguments, they are factual statements based on personal knowledge. If Plaintiff thinks that the declarations were obtained under false pretenses (which they were not), she can illicit such testimony during trial.

Lastly, as Plaintiff states in her own response to Defendants' Motion for Sanctions and to Reopen Discovery (D.E. 218), the striking of an expert and/or her report is a harsh sanction especially when there is no evidence of bad faith. See *Catalina Rental Apts., Inc v. Pac Ins. Co.*, 2007 WL 1970808 (S.D. Fla. 2007); *Quinn v. Consolidated Freightways Corp. of Delaware*, 283 F.3d 572 (3d Cir. 2002). As such, since no bad faith exists and Prof Sedlik has not violated this Court's orders, there is no basis for the striking of Prof. Sedlik as an expert or the striking of his expert report.

### VI. Plaintiff Has Not Demonstrated That Defendants Acted With Subjective Bad Faith Intent.

A party seeking sanctions under the Court's inherent power must demonstrate subjective bad faith intent. *Chambers v. Nasco*, 501 U.S. 32, 47 n. 11 (1991) ("Indeed, Rule 11 was

amended in 1983 precisely because the subjective bad-faith standard was difficult to establish and courts were therefore reluctant to invoke it as a means of imposing sanctions." See Advisory Committee's Notes on 1983 Amendment to Rule 11, 28 U.S.C.App., pp. 575-576).

Since Plaintiff has not demonstrated that Defendants or their counsel acted with subjective bad faith in connection with any aspect of this case, she is not entitled to sanctions.

## CONCLUSION

As set forth above, Plaintiff's Motion should be denied, in its entirety, because it is based on pure speculation and unfounded allegations that are merely meant to paint the Defendants and the undersigned in negative light in the days before trial. Further, there is no basis to strike the expert report of Prof. Sedlik or to strike him as an expert witness. Plaintiff has also failed to demonstrate that Defendants have acted in bad faith.

Respectfully submitted on November 15, 2010.

/s/Kevin P. Crosby
Kevin P. Crosby, Esq.
Florida Bar No. 654360
Evan D. Appell, Esq.
Florida Bar No. 58146
GRAYROBINSON, P.A.
401 East Las Olas Blvd, Suite 1850
Fort Lauderdale, FL 33301
Telephone: 954-761-8111
Facsimile: 954-761-8112
Counsel for Defendants
Sunshine Health Products, Inc. and
Cathie Rhames

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2010, I electronically filed the foregoing using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

/s/Evan D. Appell
Evan D. Appell, Esq.

## SERVICE LIST

John Bruce Ostrow, Esq.
Stephen Asher Ostrow, Esq.
John B. Ostrow, P.A.
Courthouse Tower
44 West Flagler Street
Suite 1250
Miami, FL 33130
Phone; 305-358-1496
Fax: 305-371-7999
jbostrow@bellsouth.net
stphnostrow@yahoo.com
Attorney for Plaintiff

# 827256 v1